IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-844-FL

UNITED STATES OF AMERICA,     )
    )
        Plaintiff,     )
    )
    v.     )
    )         ORDER
DOROTHY M. WISE and     )
EDDIE F. WISE,     )
    )
        Defendants.     )

This matter is before the court to memorialize and expand upon certain rulings made in open court at hearing held September 14 and 28, 2015, on plaintiff's motion for summary judgment. (DE 21). The issues raised have been briefed fully, and the parties have been heard at argument. In this posture, the motion is ripe for ruling. For the reasons stated more particularly below, plaintiff's motion is GRANTED.

## STATEMENT OF THE CASE

This case arises in an unusual procedural posture. Plaintiff, on behalf of the United States Department of Agriculture ("USDA"), filed suit in this court on November 19, 2014, seeking authority to foreclose on certain security agreements and deeds of trust executed by defendants. The deeds of trust name the USDA as beneficiary and two non-parties as trustees. Prior to initiating suit, plaintiff attempted to foreclose the deeds of trust at issue in North Carolina state court, using the power of sale provision in the deeds of trust. See generally N.C. Gen. Stat. § 45-21.1 et seq.. After some difficulty obtaining defendants' participation in those proceedings, plaintiff took a voluntary

dismissal and filed in this court, invoking the court's subject matter jurisdiction under 28 U.S.C. § 1345.

Plaintiff acknowledges that this proceeding necessarily is bound up in state law, but nonetheless moves this court for an order of foreclosure. Plaintiff suggests that this action is one for judicial foreclosure. However, plaintiff seeks a remedy not entirely consistent, in a procedural sense, with the North Carolina statutes authorizing judicial foreclosure. See generally N.C. Gen. Stat. § 1–339.1 et seq.. Rather, plaintiff requests that the court authorize the sale upon factual findings required by state law and use the procedures established by 28 U.S.C. §§ 2001, 2002, and 2004 to effectuate such sale. Specifically, plaintiff requests the USDA, along with the United States Marshal Service for this district, be allowed to seize and sell the property.

Plaintiff alleges defendants are indebted to the United States, and that such indebtedness stretches as far back as 1996, totaling $530,424.15 in principal. (Affidavit of Indebtedness, DE 1-9; Compl., DE 1, ¶¶4–5). Through this action, plaintiff hopes to recover the outstanding principal, and $60,603.81 in interest, accrued as of October 29, 2014, as well as $46.114 in interest accruing each day thereafter, and the cost of foreclosure. (Id.).

On March 10, 2015, the United States filed the instant motion for summary judgment. Therein, the government contends it is entitled to summary judgment, and thus to foreclosure of both the security agreements and deeds of trust, under North Carolina law because it is the holder of a valid debt evidenced by several promissory notes; defendants are in default, as they have not made any payments on their loans since at least 2011; and it has the right to foreclosure under those notes. Curiously, despite seeking summary judgment on both the security agreements and deeds of trust, the government does not address specifically the requirements for foreclosure under Article 9 of the

2

Uniform Commercial Code, as adopted by North Carolina. See generally N.C. Gen. Stat. § 25–9–101 et seq.. In support of its motion for summary judgment, the United States relies on the promissory notes executed by defendants, (DE 1-2 through 1-8), the deeds of trust executed in the United States's favor, (DE 1-10 through 1-12), the security agreements also executed in its favor, (DE 1-13 & 1-14), as well as the corresponding financing statements (DE 1-15 & 1-16). In addition, the United States relies on a certificate of title granting it a lien in defendants' mobile home, (1995 Certificate of Title, DE 1-17), the notice of acceleration provided to defendants, dated August 14, 2013, (Notice of Acceleration, DE 1-18), an affidavit of indebtedness executed by USDA employee Charles Huskey on October 29, 2014, (Affidavit of Indebtedness, DE 1-9), as well as two declarations executed by Huskey for purposes of this litigation, (Huskey Decl. 2014, DE 22-14; Huskey Decl. 2015 DE 22-13).

On May 29, 2015, after an extensive period of dilatory filings, defendants responded to the government's motion. In their response, defendants raised neither factual nor legal argument attacking the merits of the government's position. Rather, defendants relied solely on their putative membership in a class action now pending before the United States District Court for the District of Columbia. See generally Pigford v. Glickman, 182 F.R.D. 341 (D.D.C. 1998) (certifying class). Defendants contended their membership in the Pigford class entitles them to an administrative hearing prior to foreclosure, which has not been held.

On June 9, 2015, the government replied to defendants' response. In its reply, the government argued that defendants were not Pigford class members.

On September 14, 2015, the court held hearing on the instant motion, as well as a host of other motions arising principally out of several counterclaims not at issue here, which defendants

3

attended.[1]  At hearing, the court found that the government held a valid debt, and that defendants

had defaulted on that debt.  The court directed the government to provide additional briefing as to

its standing to foreclose on the deeds of trust, where this action was brought on behalf of the United

States and not the trustees named in those instruments.  The government filed a supplemental

briefing on the appropriate remedy, and thereafter the court held an additional hearing on September

28, 2015, which defendants did not attend.

## STATEMENT OF FACTS

This action arises out of a long series of loan transactions between defendants and the Farm

Services Agency ("FSA"), as well as its predecessor the Farmers Home Administration ("FHA"),

both constituent parts of the United States Department of Agriculture.  Defendants initially borrowed

$135,100.00 from the FSA on August 8, 1996.  (DE 1-7).  Since that time defendants have incurred

additional loans and subsequently refinanced all loans on several occasions.  (See DE 1-2 through

1-8).  Defendants secured each loan by executing either a deed of trust or security agreement in the

government's favor.  The security agreements at issue were executed on July 23, 1997, and April

25, 2008.  (DE 1-13 & 1-14).  The security agreements granted a security interest in favor of the

United States in all crops, farm equipment, live stock, as well as all accounts, contract rights, and

general intangibles owned by defendants.  (Id.).  The government's security interest was perfected

---

[1]  Defendants asserted a number of counterclaims arising out of allegedly discriminatory practices by plaintiff's various agents or employees.  The court dismissed those counterclaims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.  In doing so the court applied the doctrine of res judicata, finding that defendants previously had sued the United States, as well as various of its agents and employees, in this district, and that such suit had been dismissed on the merits.  See Wise v. U.S. Dep't of Agric., No. 4:13-CV-234-BO, 2014 WL 5460606 (E.D.N.C. Oct. 27, 2014), aff'd 592 F. App'x 203 (4th Cir. 2015)

4

with two financing statements, filed with the North Carolina Secretary of State on June 15, 2005, and May 27, 2010, and assigned file numbers 20050057252K and 20100042325M, respectively. (DE 1-15 & 1-16). In addition, the United States holds a lien on defendants' mobile home. (1995 Certificate of Title).

The deeds of trust describe the property at issue as "that certain parcel of land containing 105.4 [acres] as shown on 'Map for Farmers Home Administration, North Whitakers Township, Nash County, NC, Scale 1'=200', dated August 9, 1993 by L. Dennis Lee, P.A., recorded in Map Book 22, Page 117 of the Nash County Registry." (See, e.g., DE 1-10, 2). Those deeds of trust provided as described below:

| Grantors | Date of Execution/Recordation | Book No. | Page No. | County |
|---|---|---|---|---|
| Dorothy and Eddie Wise | Aug. 8, 1996/ Aug. 12, 1996 | 1535 | 716 | Nash |
| Dorothy and Eddie Wise | July 23, 1997/ July 24, 1997 | 1575 | 355 | Nash |
| Dorothy and Eddie Wise | July 23, 1997/ July 24, 1997 | 15475 | 360 | Nash |

(DE 1-10 through 1-12).

Defendants refinanced each of their loans on November 11, 2010. (See DE 1-2 through 1-9). As of that date, defendants' initial loan had a face value of $269,029.15. (DE 1-7). Defendants had accrued additional debt, in the form of operating loans, with face values of:

- $56,035.20, (DE 1-2);

- $56,026.50, (DE 1-3);

- $81,176.89, (DE 1-4);

5

- $17,223.92, (DE 1-5);

- $23,201.06, (DE 1-6); and

- $36,283.44, (DE 1-8),

representing total indebtedness of $538,976.16.[2]  As of October 29, 2014, those loans had an outstanding balance of:

- $269,654.15,

- $52,886.00,

- $56,026.50,

- $81,176.89,

- $17,223.92,

- $23,201.06, and

- $30,255.61

respectively, for a total indebtedness of $530,424.15.  (Affidavit of Indebtedness). $374,032.10 of that indebtedness was secured by the deeds of trust executed in the government's favor.  (Id.).  The remaining $156,392.05 was secured by the security agreements granting the government a security interest in defendants' personal property.  (Id.).

Under the terms of the various notes, as refinanced on November 11, 2010,  payments were due on a yearly basis.  (See, e.g., id. at 1).  As defendants refinanced all seven promissory notes in November 2010, (Huskey Decl. 2015 ¶3), their first payments thereon were due on November 11, 2011.  (See id.; see also, e.g., DE 1-8, 1).  Defendants failed to make any payment on November 11,

---

[2]  The Affidavit of Indebteness, as well as the complaint, understate the indebtedness evidenced on the face of the note annexed to the complaint at DE 1-8.  Those documents list the face value of that loan as $36,254.61.  (Affidavit of Indebtedness, 2).

6

2011, and have yet to make any such payment. (See Huskey Decl. 2014 ¶5; see also Huskey Decl. 2015 ¶12). On August 14, 2013, the United States notified defendants it had accelerated their indebtedness and considered the full amount outstanding on all seven promissory notes due in full. (Notice of Acceleration).

## COURT'S DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

B.    Analysis

1.    Defendants' Membership in the Pigford Class

Defendants contend they are entitled to an administrative hearing prior to foreclosure. Their argument is grounded entirely in the contention that they are members of a class currently embroiled in litigation in the District of Columbia. See generally Pigford, 182 F.R.D. 341 (D.D.C. 1998).

Pigford is an ongoing class action arising out of discriminatory loan servicing practices by the FHA, and another agency, both predecessors of the FSA. Pigford was filed in 1998, and

7

subsequently was settled through Consent Decree, entered April 14, 1999.  See generally Pigford

v. Glickman,  185 F.R.D. 82 (D.D.C. 1999) (approving settlement).  The Consent Decree allowed

putative class members to either opt out and sue individually, or to remain in the class settle the

claim through a series of procedures not at issue here.  See generally In re Black Farmers

Discrimination Litig., 856 F. Supp. 2d 1 (D.D.C. 2011) (explaining Pigford settlement procedures).

The evidence of record conclusively establishes the fact that defendants opted out of the

Pigford settlement.  (See DE 44-1, 2, 5) ("[W]e made the decision to opt out of the Pigford class

settlement.").  In addition, other courts have found defendants affirmatively opted out of the consent

decree.  See Wise v. United States, __ F. Supp. 3d __, 2015 WL 5332080, at *5 (D.D.C. 2015); Wise

v. Glickman, 257 F. Supp. 2d 123, 129 (D.D.C. 2003). Because defendants opted out of the class,

they are not entitled to the procedural protections alleged by them to be afforded to that class.[3]

    2.    Government's Motion for Summary Judgment

        a.    Security Agreements

By statute, the holder of a security interest in personal property may take possession of the

collateral by judicial process.  N.C. Gen. Stat. § 25–9–609.  To establish its entitlement to an order

authorizing possession of the collateral, the government must demonstrate 1) that it held a valid,

enforceable, perfected security interest in the property; 2) that defendants took the property under

the agreement and subject to the government's security interest; and 3) that defendants are in default.

See Paccar Fin. Corp. v. Harnett Transfer, Inc., 51 N.C. App. 1, 7–8 (1981).

---

   [3] Because defendants opted out of the Pigford class, they also are not members of the
related class in In re Black Farmers Discrimination Litigation, 856 F. Supp. 2d 1 (D.D.C. 2011),
as that class was restricted to those individuals who submitted evidence of membership in the
Pigford class too late.  See Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill"),
Pub. L. No. 110-234 § 14012(b), 112 Stat. 923, 1448 (2008).

The government has a valid, enforceable security interest in the property. Proof of a valid and enforceable security interest requires 1) a signed security agreement, 2) that describes the collateral, 3) that was given for value, and 4) evidencing that the debtor had rights in the collateral. N.C. Gen. Stat. § 25–9–503; Paccar, 51 N.C. App. at 7–8. In this case, the security agreements at issue are signed (DE 1-13, 6; DE 1-14, 7). Both describe the collateral in detail. In addition, value was given in the form of loan proceeds, to which defendants have unrestricted access. The security interest created by these agreements was perfected through the filing of two UCC financing statements, which evidence the United States to be the secured party. (DE 1-15 & 1-16). Plaintiff perfected that security interest with the filing of the various financing statements. (See DE 1-15 & 1-16). Although such filing did not operate to perfect plaintiff's security interest in defendants' mobile home, the government perfected its interest with a notation made on the certificate of title. See generally N.C. Gen. Stat. § 25–9–302(1); King Homes, Inc. v. Brison, 273 N.C. 84, 88–89 (1968). (See also generally 1995 Certificate of Title).

Defendants took the property subject to the government's security interest. Defendants were party to the transaction creating the security interest. There can be no argument that they did not take the property subject to the government's interest.

Finally, defendants are in default under the terms of the notes. "Failure to pay when due [the] debt evidenced by [the] note[s]" constitutes default. (See, e.g., DE 1-8, 3). Payments were due on a yearly basis. (See, e.g., id. at 1). Defendants refinanced all seven promissory notes in November 2010, (Huskey Decl. 2015 ¶3), and the first payments thereon were due on November 11, 2011. (See id.; see also, e.g., DE 1-8, 1). Defendants failed to make any payment on November 11, 2011, and have not thereafter made any such payment. (See Huskey Decl. 2014 ¶5; see also

9

Huskey Decl. 2015 ¶12). Thus, there are no genuine disputes of material fact and the government has carried its burden of establishing its entitlement to foreclosure.

   b. Deeds of Trust

  To demonstrate the propriety of an order authorizing a judicial foreclosure on real property, the government must prove: 1) a valid debt of which it is the holder; 2) a default under the terms of the notes; and 3) a right to foreclose. _In re_ Bass, 366 N.C. 464, 467 (2013) (establishing elements necessary for power of sale foreclosure); see also United States v. Burdick, No. 4:06-CV-48-F, 2007 WL 4165170 (E.D.N.C. Nov. 19, 2007) (applying those elements to judicial foreclosure sale). See Lifestore Bank v. Mingo Tribal Preservation Trust, 763 S.E.2d 6, 12–13 (N.C. Ct. App. 2014) (noting that foreclosure by power of sale differs from judicial foreclosure only in procedure).[4]

  The government has carried its burden. The promissory notes executed in favor of the USDA prove the government to be the holder of a valid debt. Second, defendants are in default under the terms of the notes. As stated above, defendants have not made any payment to the satisfaction of their obligation, due November 11, 2011. (See Huskey Decl. 2014 ¶5; see also Huskey Decl. 2015 ¶12). Third, plaintiff has a right to foreclose. The government, as note holder and beneficiary under the deeds of trust has the authority to seek a judicial order authorizing foreclosure. See Langston v. Brown, 260 N.C. 518 (1963); G.E. Capital Mortg. Servs., Inc. v.

---

  [4] The elements recited by the court are those necessary for a power of sale foreclosure, save the notice requirement. Despite the differences in judicial and power of sale proceedings, it appears that in judicial proceedings the elements are the same. See United States v. Burdick, No. 4:06-CV-48, 2007 WL 4165170 (E.D.N.C. Nov. 19, 2007). Notice in the case of a judicial foreclosure is satisfied by filing of complaint and summons. Cf. Webster's Real Estate Law in North Carolina § 13.32(1) (describing notice in a power of sale proceeding as informal notification, containing certain required information, informing the trustor/mortgagor of hearing).

<u>Neely</u>, 135 N.C. App. 187 (1999); <u>see also</u> <u>Telesis Cmty. Credit Union v. Mantiff 1215 Statesville</u>

<u>Hosp. LLC</u>, 2010 WL 3475471 (W.D.N.C. Sept. 1, 2010).  Defendants do not contest any of these

elements.

Accordingly, the government is entitled to a judgment of foreclosure against defendants as

to the deeds of trust executed in its favor.  However, before such judgment may issue the

government must correct certain procedural deficiencies.  "A . . . trustee, in a deed of trust, is an

indispensable party plaintiff in an action to foreclose the mortgage." Webster's Real Estate Law in

North Carolina § 13.30(3); <u>accord</u> <u>E. Carolina Lumber Co. v. Pamlico Cnty.</u>, 250 N.C. 681, 684

(1959).  Accordingly, **the United States is DIRECTED to amend the pleadings within 21 days**

to name as party plaintiffs, in addition to itself, the trustees named in the deeds of trust, or such

substitute trustees as may be named in the interim.

C.      Appropriate Remedy

The government requests the court authorize a sale in accord with the procedures outlined

in 28 U.S.C. §§ 2001, 2002, and 2004, rather than those established by N.C. Gen.  Stat. § 1–339.1

<u>et seq.</u>.  In particular, the government moves the court to appoint the United States Marshal Service

for this district as receiver and authorize the sale of the property so foreclosed, without necessity of

judicial confirmation, as would be required under North Carolina law.  <u>See</u> N.C. Gen. Stat. §§

1–339.28 & .37.

Sections 2001 and 2002 establish a procedure applicable whenever "[a]ny realty or interest

therein [is] sold under . . . order . . . of any court of the United States."  28 U.S.C. § 2001 & 2002.

Section 2004, governing the sale of personalty, requires it be sold in accordance with § 2001 unless

the court orders otherwise.  <u>Id.</u> § 2004.  Even if the plain text of the statute did not conclusively

establish a procedure for sale, "federal law governs questions involving the rights of the United States arising under nationwide federal programs." United States v. Kimbell Foods, Inc., 440 U.S. 715, 726 (1979); see also United States v. Ward, 985 F.2d 500, 503 (10th Cir. 1993) (in a foreclosure action government not barred by underlying state statute of limitations). Thus, notwithstanding the fact that the government's power to foreclose emanates from state law, § 2001 and § 2002 govern the procedures to be followed in this court.

D.     Order of Sale

At the conclusion of 21 days from the date of entry of this order, or at such earlier time as the government complies with the above direction, the court orders as follows:

1.     The clerk of court is DIRECTED to enter judgment in favor of the United States in the amount of:

    a.     $428,276.44, representing the principal and interest accrued on the debt secured by the deeds of trust described more particularly herein, for the time period up to and including October 29, 2014, as well as all interest accruing from that date to the date of judgment, at a rate of $37.5446 per day, and thereafter at the applicable statutory rate;

    b.     $162,751.52, representing the principal and interest accrued on the debt secured by the various security instruments described more particularly herein, for the time period up to and including October 29, 2014, as well as all interest accruing from that date to the date of judgment, at a rate of $8.5694 per day, and thereafter at the applicable statutory rate;

2.     The clerk is DIRECTED to enter a judgment of foreclosure as to the United States's

12

security interests in defendants' real and personal property at issue in this matter, as more fully described in the security agreements, financing statements, and deeds of trust referenced herein, including but not limited to approximately 105 acres located near Whitakers, North Carolina, defendants' mobile home, crop allotment or quota, watering and feeding systems, livestock, crops, and various farm equipment, and further that all right, title and interest to such property in defendants, including any equity of redemption rights, shall be forever barred;

3.   The United States Marshal Service for this district and the United States Department of Agriculture hereby are APPOINTED as Substitute Custodians under 28 U.S.C. § 2001(a).  Acting as Substitute Custodians, the United States Marshal Service for this district and the United States Department of Agriculture may sell the personal property in any commercially reasonable manner, including using a broker to assist in the sale of the property and using an auction, bid process, or any other reasonable commercial manner to sell the personal property;

4.   The Substitute Custodians named herein are DIRECTED, with the assistance of any broker retained at their discretion, to conduct a public sale of all property referenced herein in a commercially reasonable manner as they deem appropriate and as expressly required by 28 U.S.C. §§ 2001 & 2002, including public sale at the Nash County, North Carolina, courthouse and notice published at least once per week, for at least four weeks prior to the sale in at least one area newspaper regularly issued and of general circulation;

5.   The United States Marshal Service for this district hereby is APPOINTED and

authorized pursuant to 28 U.S.C. §§ 264, 566, and 2001 et seq., as well as N.C. Gen. Stat. § 1–399.3 et seq., to exercise the same powers in conducting the sale as the Trustee under the United States's deed of trust, or other official customarily conducting foreclosure sales in Nash County, in order to yield the best sale price of the property through free, fair, and competitive bidding;

6.    After compliance with the terms of sale as specified herein, the United States Marshal Service for this district is DIRECTED to convey titled in fee simple to the real property purchaser, through the filing of a Marshal's Deed and/or Certificate of Title, in the local land records office, as provided for by applicable state law;

7.    In furtherance of the above named Substitute Custodians right to sell the property, the United States Marshal Service for this district is DIRECTED to enter upon the land describe above and seize the real and personal property named.  The United States Marshal Service for this district is authorized to take all reasonable steps necessary to take possession of the property, including ejecting defendants from the property and entering onto the real property in question and onto any other real property where there is reason to believe any of the personal property subject to the court's judgment is located;

8.    Defendants are DIRECTED to follow and comply with all directives of the United States Marshal Service regarding the preservation, transfer, and sale of live stock. Defendants further are DIRECTED to vacate the property on or before November 2, 2015, without any waste, damage, or vandalism.  Finally, defendants are DIRECTED to assemble and transfer possession of all the collateral included in the

Security Instruments at issue on or before November 2, 2015, each as directed by the United States Marshal Service or United States Department of Agriculture;

9.  All incidental expenses, commissions, and fees incurred in conjunction with said sales shall be paid, and the balance remitted to the United States Department of Agriculture, up to the full amounts due as described in the judgment entered in this case.

After issuance of judgment in this matter, the clerk of court is DIRECTED to close this case.

This 9 October 2015.

_____

W. Earl Britt

Senior U.S. District Judge