| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| CHARLES M. HUSKEY, *in His* | ) | |
| *Official Capacity as Trustee on Deeds* | ) | |
| *of Trust*, | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| DOROTHY M. WISE and | ) | |
| EDDIE F. WISE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for reconsideration of the court's order granting plaintiff United States's motion for summary judgment, (DE 67), as well as defendants' motion to supplement their argument made in support of their motion for reconsideration. (DE 68). Embedded within defendants' motion for reconsideration are motions to stay the court's judgment until after resolution of a related case in the United States District Court for the District of Columbia, Wise v. United States, No. 1:15-CV-1331 (D.D.C. 2015) ("Wise V"), a motion to transfer this case to the District of Columbia so that it may be consolidated with the Wise V case, and a motion to stay enforcement of the court's judgment until disposition of a recently-filed administrative complaint. The issues raised in these filings have been briefed fully, and in this posture are ripe for ruling.

In addition, also pending before the court is defendants' separately-filed motion to stay enforcement of the court's impending judgment until disposition of the Wise V case, transfer this case to the District Court for the District of Columbia for consolidation with Wise V, or in the

alternative stay this case until disposition of the previously-mentioned administrative action. (DE 72). The United States has responded in opposition to this motion. Although defendants have not been afforded the opportunity to reply, the court determines that further briefing is unnecessary as the arguments raised in defendants' opening brief duplicate those raised in their various motions embedded within their motion for reconsideration. Accordingly, the court deems defendants' motion susceptible to decision herein. For the reasons stated more specifically below, defendants' motion to supplement is GRANTED, and as such the court will consider all arguments advanced by defendants in support of their motion for reconsideration. However, even upon consideration of each argument, defendants' motion for reconsideration is without merit and accordingly is DENIED. Defendants' various motions to transfer and stay also are DENIED.

## BACKGROUND

The motions presently under consideration arise out of a lengthy and hard-fought foreclosure proceeding, which itself arose after defendants defaulted on several loans owed to the United States Department of Agriculture ("USDA"), through its agency, the Farm Services Agency ("FSA"), as well as the FSA's predecessor in interest, the Farmers' Home Administration ("FmHA"). Defendants began borrowing from the FmHA in 1996. Over the course of 15 years, defendants accrued in excess of $500,000.00 in debt, payable to the USDA. In 1997, and thereafter upon yearly reapplication, the FmHA and FSA extended to defendants favorable financing terms, which allowed them to repay the principal on their various loans over a longer period of time and at substantially reduced interest rates. In 2011, the United States, through the FSA, refused to extend to defendants those favorable financing terms. As a result of the FSA's refusal, defendants defaulted on their

2

loans in 2011. In 2013, the USDA elected to declare defendants in default and accelerate the full amount of their indebtedness.

Also in 2013, defendants, who are African-Americans, filed suit in this court and alleged that the United States had violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., by refusing them favorable financing on the basis of race. See generally Wise v. U.S. Dep't of Agric., No. 4:13-CV-234-BO (E.D.N.C. 2013) ("Wise III"). Defendants attributed the government's actions, after so many years of favorable financing, to a change in personnel. In particular, the FSA employee previously responsible for processing defendants' application, an African-American man, resigned and was replaced by a white woman. That case was dismissed on the government's motion, made pursuant to Federal Rule of Civil Procedure 12(b)(6). See Wise III, 2014 WL 5460606 (E.D.N.C. Oct. 27, 2014). Defendants appealed, but the court's ruling was affirmed by the Fourth Circuit. See generally 592 F. App'x 203 (4th Cir. 2015).

The United States initiated these proceedings on November 19, 2014. In its complaint, the government sought a court order authorizing foreclosure on its security interests in the chattels and real property pledged as collateral for defendants' loans. Defendants counterclaimed against the government, as well as other USDA employees, and re-alleged the same facts, and many of the same claims, that arose out of the FSA's 2011 decision to deny defendants favorable financing and were at issue in defendants' 2013 lawsuit. After defendants filed their counterclaims, the parties engaged in a lengthy period of motions practice. On January 29, 2015, the United States filed a motion to dismiss defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6), arguing that all those claims were barred by the doctrine of res judicata. In addition, on March 10, 2015, the United States filed a motion for summary judgment on its foreclosure claim.

3

Defendants responded to the United States's motions, and also filed their own motion to dismiss, motion to stay the case, and motion to transfer venue. In their motions to stay and transfer, defendants cited Pigford v. Glickman, a 1998 class action lawsuit in the United States District Court for the District of Columbia. See generally 182 F.R.D. 341 (D.D.C. 1998) (certifying class). The Pigford case was settled by consent decree in 1999, and the District Court for the District of Columbia retains jurisdiction over the consent decree to adjudicate issues arising out of its enforcement. Defendants contended the Pigford consent decree, and in particular the District of Columbia District Court's continuing jurisdiction over disputes arising under the consent decree, impacted the government's ability to foreclose its security interests and the court's power to dispose of their counterclaims.

The court held hearing on all motions on September 14, 2015. At that hearing, the court denied each of defendants' motions and granted the government's motion to dismiss defendants' counterclaims. In addition, the court indicated that it would grant the government's motion for summary judgment. After receiving supplemental briefing on the court's power to order the United States Marshal's Service to seize and sell the property at issue, the court entered written order granting the government's motion on October 9, 2015. See generally United States v. Wise, No. 5:14-CV-844-FL, 2015 WL 5918027 (E.D.N.C. Oct. 9, 2015) ("Wise Foreclosure"). In its order, the court noted that the government had neglected to join as party-plaintiff the trustee named in the deeds of trust upon which the government sought foreclosure. Accordingly, the court directed the government to file an amended pleading naming as plaintiff the trustee, or any substitute trustee. The court's order then directed the clerk to enter judgment on the amended complaint. On October

4

19, 2015, the United States filed an amended complaint, naming as plaintiffs itself and Charles M. Huskey, in his capacity as trustee on the various deeds of trust.

On October 14, 2015, defendants filed the instant motion for reconsideration. On October 15, 2015, defendants filed the instant motion to supplement. Defendants essentially argue that the court erred in determining the status of their membership in the Pigford class. Defendants' arguments in support of their embedded motion to transfer, as well as a portion of their embedded motion to stay, turn on the court's disposition of their Pigford membership. In particular, defendants argue that their membership in the Pigford class requires the court to transfer this case to the United States District Court for the District of Columbia for resolution alongside Wise V, 1:15-CV-113 (D.D.C. 2015), a case that parallels their 2013 lawsuit and previously dismissed counterclaims in the instant action, or, in any case, to a stay of the entry of the court's judgment pending resolution of that related action. In addition, defendants move the court for a stay pending resolution of a recently-filed administrative complaint challenging the USDA's alleged 2011 violation of the ECOA; the same violation that served as the basis of defendants' 2013 lawsuit and counterclaims in the instant case.

On November 12, 2015, defendants filed their motion to transfer venue to the District of Columbia, motion to stay entry of the court's judgment pending resolution of their related case in the District of Columbia, and motion to stay pending resolution of their recently-filed administrative complaint. The arguments raised in support thereof are identical to the arguments raised in support of defendants' motion for reconsideration and the various motions embedded therein.[1] On

---

[1] Defendants' motion is styled as one "to transfer to District of Columbia District Court or in the alternative motion to stay pending disposition of petition of review before the administrative law judge and motion for contempt and enforcement of Pigford consent decree

5

November 17, 2015, the United States responded in opposition to defendants' motion, incorporating by reference its prior response in opposition.

**COURT'S DISCUSSION**

A.   Motion for Reconsideration

   1.   Standard of Review

Defendants style their motion as one for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). By its terms, Rule 59(e) applies to judgments, not interlocutory orders, such as the summary judgment order at issue here. See Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003). Nevertheless, in absence of a clearly defined standard governing interlocutory motions for reconsideration, courts in this circuit have analyzed such motions under the framework of Rule 59(e), among other rules. See, e.g., Shrewsbury v. Cyprus Kanawha Corp., 183 F.R.D. 492, 493 (S.D. W. Va. 1998) (applying Rules 59(e) and 60(b) to motion for reconsideration); see also Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1470–73 (4th Cir. 1991) (noting it was "unnecessary to thoroughly express [the court's] views on the interplay of Rules 60, 59, and 54" in addressing an interlocutory motion for reconsideration; collecting cases applying Rule 60

---

pending in the District of Columbia District Court Case 97-CV-01978." (DE 72). The court briefly addresses defendants' motion, inasmuch as it sounds as one for contempt sanctions, at this point. Civil contempt requires 1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; 2) that the decree be in the movant's favor; 3) the alleged contemnor's conduct violate the terms of that decree with knowledge of such violation; and 4) harm to the movant. JTH Tax, Inc. v. H&R Block E. Tax Servs., Inc., 359 F.3d 699, 705 (4th Cir. 2004). The court does not address defendants' motion any further. Defendants' briefing never addresses any contempt argument. In addition, for the reasons set out more particularly below, defendants cannot meet the third element required for entry of contempt sanctions.

standard guiding such motions). Accordingly, although the court is not bound by Rule 59(e)'s framework, that rule informs the court's analysis.

A Rule 59(e) motion for reconsideration allows the court to reconsider its prior orders: 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not previously available; or 3) to correct a clear error of law or prevent manifest injustice. Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). In brief, defendants invoke the third consideration, prevention of manifest injustice. In particular, defendants suggest the court erred in its analysis of their membership in the Pigford class and that such error will lead to an unwarranted foreclosure on their real and personal property.

2. Analysis

a. Pigford v. Glickman

Defendants' arguments primarily are grounded in the Pigford case. In that case, a group of African-American farmers brought suit on behalf of a larger class against the USDA under the ECOA, alleging racial discrimination in the USDA's financing practices between January 1, 1983 and February 21, 1997. See generally *In re* Black Farmers Discrimination Litig., 856 F. Supp. 2d 1, 7–10 (D.D.C. 2011) (describing Pigford litigation). The case represented an attempt by those affected farmers to seek redress for admitted, systematic discrimination by the USDA occurring during roughly the same time period. Id. at 7. The Pigford case was settled through a consent decree, entered April 14, 1999. See generally Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999) ("Pigford II") (approving settlement).

The consent decree allowed putative class members to either opt out and sue individually or settle their claim through one of two methods. See Black Farmers, 856 F. Supp. 2d at 9–10. Every

7

class member who elected to remain in the Pigford class first submitted evidence of class membership to a neutral third-party "Facilitator." Id. at 9. Once the Facilitator ruled on class membership, class members were allowed to select between "Track A" adjudication and "Track B" arbitration. "Track A" "allowed a claimant to prevail by presenting 'substantial evidence' of discrimination to a neutral third party 'Adjudicator.'" Id. "Track B claims were heard by another third-party neutral, the 'Arbitrator,' who could receive written testimony and documentation as evidence but would conduct only a one-day mini-trial of each plaintiff's claims." Id. The different "tracks" employed different evidentiary standards and allowed for different recoveries to successful plaintiffs. Id.

The existence of the Pigford class's ECOA claim, at the time suit was filed in 1998, was no small matter, as it required a literal "act of Congress." At the time, the Equal Credit Opportunity Act had a two-year statute of limitations. See 15 U.S.C. § 1691e(f) (2000).[2] However, in 1998, in response to the USDA's widespread discriminatory practices, Congress retroactively amended the statute of limitations for claims against the USDA arising between January 1, 1981, and July 1, 1997, to allow all persons discriminated against during that period to bring suit by October 2000. See Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat 2681 § 741(a) & (e) (Oct. 21, 1998) (codified at 7 U.S.C. § 2279 Historical Note) ("§ 741"). In addition to revising the statute of limitations, § 741 also established a two track procedure for the resolution of discrimination claims. The first track allowed aggrieved persons to bring suit in federal district court. Id. § 741(a). The second allowed the complainant to seek an

---

[2] The statute was amended in 2011 and now has a five-year statute of limitations. 15 U.S.C. § 1691e(f).

administrative adjudication within the same two-year window, "in lieu of filing a civil action." Id. § 741(b).

      b.      Applicability of the Pigford Consent Decree

Defendants contend that the court should reconsider its order inasmuch as the court held that they were not members of the Pigford class. Defendants, relying on the United States District Court for the District of Columbia's exclusive jurisdiction over Pigford-related claims, further contend that, upon appropriate resolution of their membership in that class, the court must either transfer this case to the United States District Court for the District of Columbia so that it may be resolved as part of defendants' related ECOA proceeding, or stay this case pending the outcome of that proceeding. In response, plaintiffs contend rely on their earlier argument that defendants opted out of the Pigford class.

The court will not reconsider its ruling. As explained below, the Pigford consent decree does not apply prospectively and thus, has no impact on the USDA's alleged 2011 violation of the ECOA. Moreover, as explained in the court's order on plaintiff's motion for summary judgment, and expanded upon below, even assuming the Pigford consent decree did have some prospective effect, it affords defendants no respite because they are not members of the Pigford class.

Defendants cannot use the consent decree as a shield against the government's impending foreclosure because that document applies only to ECOA violations arising between January 1, 1981, and December 31, 1996. See Consent Decree, Pigford v. Glickman, No. 1:97-CV-1978-PLF,

9

DE 167, ¶¶2(a), 18; see also Pigford II, 185 F.R.D. at 92, 110–12 (noting court's concern with lack of prospective injunctive relief).[3] The alleged discrimination at issue here occurred in 2011. (See Counterclaim, DE 4).[4] Because the consent decree settled past discrimination claims only, defendants cannot rely on its procedure to preempt the instant action.

Second, even assuming the Pigford consent decree could apply to control the instant proceedings, defendants opted out of the Pigford class and cannot rely on the procedural protections afforded by the Pigford decree. The court so held in its order on summary judgment by relying on defendant Dorothy Wise's testimony, given before the House Committee on Agriculture, wherein she explicitly stated that she and defendant Eddie Wise opted out of the Pigford class. (See DE 44-1). Although defendants contend the government has not carried its burden to prove they opted out of the Pigford class, the court's prior ruling relied exclusively on statements submitted by defendants themselves. Defendants cannot now be heard to deny the validity of those statements.

Moreover, other means conclusively establish defendants' non-membership in the Pigford class. For example, the government independently met its burden of demonstrating that defendant Eddie Wise opted out of the Pigford case by submitting the declaration of Richard Bithell, an individual employed by the Pigford Facilitator, who personally is tasked with determining Pigford class membership. (See Bithell Decl., DE 57-1, ¶¶1, 6–7). In his declaration, Bithell avers that the facilitator received a form from defendant Eddie Wise affirmatively opting out of the class. (Id.).

---

[3] Defendants also filed a copy of the consent decree, lodged on the docket at entry 44-2.

[4] See also, e.g., Wise v. United States, __ F. Supp. 3d __, 2015 WL 5332080, at *2 (D.D.C. 2015) ("Wise IV") (discussing identical claims in a suit brought in the United States District Court for the District of Columbia); Wise III, 2014 WL 5460606, at *1–2 (discussing same).

10

In addition, although Bithell's declaration never explicitly states that defendant Dorothy Wise opted out of the Pigford class, based on her inconsistent position in previous litigation, she is judicially estopped from arguing that she remains a class member. Judicial estoppel apples where: 1) the party to be estopped takes a position inconsistent with that taken in prior litigation; 2) that position previously was accepted by the court; and 3) the party to be estopped must have "intentionally misled the court to gain unfair advantage." Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996). Defendant Dorothy Wise meets all three prongs. She previously has argued she opted out of the Pigford class. See Wise v. Glickman, 257 F. Supp. 2d 123, 129 (D.D.C. 2003) ("Wise I"). ("Dorothy Monroe-Wise . . . opted out of the Pigford class."). That position clearly was accepted by the Wise I court where defendant Dorothy Wise's complaint survived the government's motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). See id. Notably, in ruling on the government's motion the Wise I court found that defendant Dorothy Wise opted out of the Pigford class and thus declined to dismiss her complaint.

Finally, assuming defendant Dorothy Wise never opted out of the Pigford class, as she now claims, then the court finds that she previously intentionally misled the court to gain an unfair advantage. Although the court frequently cannot survey a litigants subjective intentions, in this case defendant Dorothy Wise has submitted to the court her own testimony, given before Congress, that affords the court that rare opportunity. In particular, defendant Dorothy Wise testified that she opted out of the Pigford class to lead a new class action, the Wise I case, whereby she could achieve her own goals, including monetary relief and injunctive relief against the USDA. (DE 44-1, 5). Accordingly, defendant Dorothy Wise is estopped from arguing that she never opted out of the

11

Pigford litigation and she must bear the burden of her prior inconsistent position. Thus, the Pigford consent decree does not apply in this case, nor does it apply to defendants in any case.

Defendants contest both of these points. First, defendants contend that in approving the Pigford consent decree, the district judge explicitly noted that those who opted out would be able to sue individually. Defendants, in fact, have been able to sue individually numerous times. After opting out of the Pigford case, defendants sued the USDA in this district for discrimination occurring in 1992. Wi[s]e v. Vilsack, No. 5:10-CV-197-BO, 2011 WL 381765 (E.D.N.C. Feb. 2, 2011) ("Wise II").[5] Later, defendants brought suit in this district again, asserting claims against the United States arising out of the same transactions that formed the nucleus of their previously dismissed counterclaims and their now-pending administrative complaint. See Wise III, 2014 WL 5460606. In addition, defendants brought suits predicated on those same allegations in other districts. See Wise IV, 2015 WL 5332080 (D.D.C. 2015). Although defendants suggest the court erred in citing other cases where courts found they had opted out of the Pigford consent decree, that contention alone does not merit reconsideration. As the court noted above, reliance on the facts found by other courts is appropriate where defendant Dorothy Wise is judicially estopped from arguing that she did not opt out of the Pigford litigation. Moreover, judicial estoppel merely provides an additional ground upon which the court's order may rest. As the court noted in its summary judgment order, record evidence submitted by defendants conclusively establishes that they opted out of the Pigford class. Wise Foreclosure, 2015 WL 5918027, at *3–4.

---

[5] On Westlaw this case is captioned "Wide v. Vilsack." However, the court's records reflect the correct caption.

Second, defendants contend that the court's order on the United States's motion for summary judgment misapprehended the definition of "opt out," citing <u>Benoit v. USDA</u>, 608 F.3d 17 (D.C. Cir. 2010). Defendants quote the <u>Benoit</u> court's discussion of § 741 at length and subsequently argue that the case addresses the opt out procedures created by the <u>Pigford</u> consent decree. Defendants apparently conflate the two independent avenues for administrative relief created by Congress through implementation of § 741, with the two track claim settlement procedure established by the <u>Pigford</u> consent decree.

As discussed more fully below § 741 allows a complainant to 1) file suit in federal district court, or 2) file an administrative complaint with the USDA, which later may be reviewed in federal district court. However, a complainant may not file suit in federal district court and subsequently petition for agency review of the same allegedly discriminatory act. The <u>Pigford</u> case, including its consent decree, merely is an example of § 741(a) in operation. The plaintiff class filed a law suit, which subsequently was settled. Although the consent decree established an administrative procedure for determining liability, that procedure neither is an example of § 741(b) in practice, nor is it in any way related to § 741(b). The <u>Pigford</u> settlement procedure is governed exclusively by the contractual agreement entered into between the class representatives and the USDA. The procedures under the consent decree differ from § 741(b) in two critical respects. First, on the one hand, the consent decree allows a neutral third-party to settle claims. On the other hand, § 741(b) relies on the USDA itself to settle claims. Second, the consent decree allowed for administrative adjudication of liability following a suit in federal court. By contrast, claim adjudication under § 741(b) can occur only before a suit in federal district court. <u>See</u> <u>infra</u>.

B.      Motion to Stay Pending Outcome of Related Litigation

13

Defendants suggest that the court should stay this case pending outcome of Wise V, a related case in the United States District Court for the District of Columbia wherein defendants raise arguments identical to those raised in the 2013 Wise III case and in their counterclaims raised in the instant mater. See Wise v. United States, No. 1:15-CV-1331 (D.D.C. 2015). Defendants asserted basis for their motion to stay is the Wise V court's exclusive and continuing jurisdiction over claims arising under the Pigford consent decree.

As discussed above, defendants are not members of the Pigford class and are not entitled to a stay on that basis. In addition, where defendants first brought their ECOA claims in this court, the court need not stay the current proceedings to await disposition of an identical later-filed suit by a sister district court. See Ellicot Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 181 (4th Cir. 1974); see also Learning Network, Inc. v. Discovery Commc'ns Inc., 11 F. App'x 297, 300–01 (4th Cir. 2001). Thus, defendants' motion to stay is denied.

C.      Motion to Transfer

Defendants contend the court should transfer this case to the District of Columbia pursuant to 28 U.S.C. § 1404, where the Wise V case is now pending before that court. Defendants argue that the court must transfer the case because they are members of the Pigford class, and are entitled to have that district court enforce the consent decree. Defendants' argument fails for two reasons. First, as was discussed at length above, the Pigford consent decree does not cover this action. Second, and again as discussed above, defendants are not members of the Pigford class. Because defendants are not members of the Pigford class, the interest of justice favors adjudication in this district. Moreover, adjudication in this district is more convenient for the parties, where the property

14

and chattels to be sold in satisfaction of defendants' debts are located in this district. Accordingly, defendants' motion to transfer is denied.

D.      Motion for Stay Pending Administrative Hearing

Defendants also have filed a motion for stay, both embedded within their motion for reconsideration and as a stand-alone filing. In either case, the motion focuses on § 741, and its associated regulations. See generally 7 C.F.R. § 15f.1 et seq. Defendants argue they are entitled to a stay of this case pending resolution of an administrative complaint recently filed with the USDA. The United States responds and argues that defendants have waived any right to a hearing by filing suit in the district court, see generally, e.g., Wise III, 2014 WL 5460606, and thus that, even if § 741 required a stay, defendants are not entitled to one on the facts of their case.

As an initial matter, it is doubtful that § 741 applies to defendant's recently-filed administrative complaint at all. Section 741(e) explicitly notes that § 741 applies only to "nonemployment related complaint[s] . . . filed with the Department of Agriculture before July 1, 1997 [which also] allege[] discrimination at any time during the period beginning on January 1, 1981 and ending December 31, 1996." Pub. L. No. 105-227, § 741(e). Here, defendants' administrative complaint pertains only to the USDA's 2011 denial of defendants' request for favorable credit terms, and the court's order granting the United States's motion for summary judgment. (See Defs.'s Pet. for ALJ Review, DE 72-3, at 1).

However, even assuming that § 741 might apply to defendants' present case in certain circumstances, on the facts of this case the court holds that defendants have procedurally defaulted on any right to have their complaint resolved by the USDA using that procedure. The relevant provisions of § 741 provides:

15

> (a) To the extent permitted by the Constitution, any civil action to obtain relief with respect to the discrimination alleged in an eligible complaint, if commenced not later than 2 years after the date of the enactment of this Act, shall not be barred by any statute of limitations.
>
> (b) The complainant may, in lieu of filing a civil action, seek a determination on the merits of the eligible complaint by the Department of Agriculture if such complaint was filed not later than 2 years after the date of the enactment of this act. The Department of Agriculture shall –
>
> > (1) provide the complainant an opportunity for a hearing on the record before making that determination
>
> . . .
>
> (c) Notwithstanding subsections (a) and (b), if an eligible claim is denied administratively, the claimant shall have at least 180 days to commence a cause of action in a Federal court of competent jurisdiction seeking a review of such denial.

Pub. L. No. 105-227, § 741.

The issue raised by defendants' motion is whether a complainant may file an administrative complaint under § 741(b) when the same complainant earlier has filed suit in federal district court under § 741(a). They may not. Under the plain text of the statute, administrative review is not possible where a complainant elects to file suit in the district court in the first instance, as § 741(a) and (b) create mutually exclusive avenues of review. Id. § 741(b) ("The complainant may, in lieu of filing a civil action, seek a determination on the merits of an eligible complaint by the [USDA].") (emphasis added); see also Garcia v. Vilsack, 563 F.3d 519, 523–24 (D.C. Cir. 2009) ("[A]ppellants chose to forego [§ 741(b) relief] when they filed their lawsuits pursuant to Section 741(a)."). Because defendants elected to file their 2013 suit in federal district court, they have waived their right to administrative adjudication of their ECOA claim under § 741(b).

16

Defendants dispute this conclusion and point to the case of Charles McDonald, a plaintiff in the Benoit case. See generally 577 F. Supp. 2d 12 (D.D.C. 2008), aff'd, 608 F.3d 17. Defendants contend that the procedural posture of McDonald's case parallels their own, in particular pointing to McDonald's involvement in a suit filed in federal district court prior to an administrative award of relief. In support of their argument, defendants submit a 2010 administrative decision awarding McDonald monetary relief. However, the two cases are dissimilar and defendants attempts to characterize their situation as analogous to McDonald's is nothing more than a futile attempt to preclude foreclose.

To be sure, McDonald and defendants both opted out of the Pigford litigation. See Benoit, 577 F. Supp. 2d at 19; see also supra. Unfortunately for defendants, that is where the similarities between the two cases end. McDonald, along with another, opted out of the Pigford class and elected to pursue administrative remedies under § 741(b). Id. The USDA thereafter failed to respond to McDonald's claims. See id. After a substantial period of time, he, along with other putative plaintiffs who also had filed administrative complaints, filed suit against the USDA under the ECOA, arguing that the statute of limitations was waived under § 741(c)–the section authorizing complainants who filed administrative actions to seek judicial review of the final agency decision in those actions. Id.; see also § 741(c). McDonald argued that because the agency had failed to timely respond to his petition for relief, his administrative complaint had been constructively denied. See Benoit, 577 F. Supp. 2d at 19. However, the district court disagreed and granted summary judgment in the USDA's favor "with respect to the issue disputed by the parties . . . whether the plaintiffs may seek judicial review." Id. 19 & n.22. Id. In particular, the court held that the agency's

17

delay was of no moment and that § 741(c) authorized judicial review only where there had been a final, reviewable administrative order. Id.

By contrast, defendants opted out of the Pigford class and elected to pursue their ECOA claim in federal district court, foregoing their opportunity to have administrative review. See Wise II, 2011 WL 381765, at *3–4; Wise I, 257 F. Supp. 2d at 129. In addition, assuming § 741 applied to defendants' already-dismissed ECOA claim arising out of the USDA's 2011 denial of credit, they already have elected to forego any available administrative remedies on that claim as well. See Wise III, No. 4:13-CV-234-BO (E.D.N.C. 2013). Accordingly, defendants are not entitled to any administrative relief on that ECOA claim.

In any event, defendants also suggest they are entitled to a moratorium on foreclosure of their loans under 7 U.S.C. § 1981a(b) and 7 C.F.R. § 766.358, because they have pending a claim for administrative review under the regulations implementing Title VI of the Civil Rights Act of 1964 (Title VI"), 42 U.S.C. § 2000d et seq. Defendants are mistaken. First, the regulations implementing Title VI afford administrative relief only to persons "subjected to discrimination under any program or activity of an applicant or recipient receiving Federal financial assistance from [the USDA] or any Agency thereof." 7 C.F.R § 15.1(a). Defendants' previously-dismissed ECOA complaint challenged action taken by the USDA directly, not a third party that receives funds from the USDA. Such a claim is not entitled to administrative review under 42 U.S.C. § 2000d or its associated regulations. See, e.g., Soberal-Perez v. Heckler, 717 F.2d 36, 38–41 (2d Cir. 1983); Ingram v. Morgan State Univ., No. 95-2314, 1996 WL 13861, at *1 (4th Cir. Jan. 16, 1996). Second, 7 C.F.R. § 766.358 provides for a moratorium only until such discrimination claim "has been resolved by the USDA or closed by a court of competent jurisdiction." 7 C.F.R. § 766.358(a). Defendants' ECOA

18

claim already has been closed by a court of competent jurisdiction. See Wise III, 2014 WL 5460606. Thus, even assuming § 766.358 applied in this case, no moratorium is required at this late stage.

Finally, to the extent that defendants suggest they are entitled to an injunction under the Administrative Procedure Act ("APA"), 5 U.S.C. § 705, they are not. Defendants currently have no APA claim pending. In their counterclaims, defendants asserted a violation of the APA. However, at hearing held September 14, 2015, the court dismissed defendants' APA claim on the government's motion, made pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. In doing so, the court relied on an earlier order dismissing identical claims. See Wise III, 2014 WL 5460606, at *2–3. Accordingly, defendants' motion to stay enforcement of the judgment pending resolution of their recently-filed administrative proceeding is denied.

## CONCLUSION

Based on the foregoing, defendants' motion to supplement their motion for reconsideration (DE 68) is GRANTED and the court has considered all arguments raised therein. Defendants' motion for reconsideration of the court's order granting plaintiff's motion for summary judgment (DE 67) is DENIED. Defendants' motion to stay pending outcome of administrative hearing, motion to stay pending outcome of a related civil case in the United States District Court for the District of Columbia, and motion to transfer this action to that same court, made in conjunction with defendants' motion for reconsideration (DE 67, 68), and again as stand alone motions (DE 72) are DENIED. The clerk is DIRECTED to enter judgment in favor of the United States on the terms set

forth in the court's prior order.

This 18 November 2015.

_____
W. Earl Britt
Senior U.S. District Judge