IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-844-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, and CHARLES M. HUSKEY, *in His Official Capacity as Trustee on Deeds of Trust*, </br></br> Plaintiffs, </br></br> v. </br></br> DOROTHY M. WISE and EDDIE F. WISE, </br></br> Defendants. | ORDER |

This matter is before the court on defendants' (the "Wises") motion to reconsider the court's February 25, 2016, order denying a stay of its judgment pending the Wises's appeal. (DE 84). The issues raised have been briefed fully. For the reasons that follow, the court DENIES the Wises's motion to reconsider.

## BACKGROUND

A. Origin of the Wises's Debts

From 1996 until sometime in 2010, the Wises incurred more than $500,000.00 in debt from certain loans extended to them by the United States Department of Agriculture ("USDA"), through the Farmer's Home Administration ("FmHA") and its successor, the Farm Services Agency ("FSA"). The Wises secured that debt by granting the USDA a security interest in their real and personal property, evidenced by certain deeds of trust and security agreements. (See DE 1-10 through 1-16). During that time, the FmHA, and later the FSA, also serviced the Wises's loans,

which allowed the Wises to repay both their principal debt and accrued interest over a longer period of time, and in substantially smaller installments, than was provided by their original debt instrument.  However, in 2011, the FSA refused to service the Wises's loans.  The motive behind the FSA's refusal is disputed.  From the government's perspective, the FSA declined servicing because the Wises's farm profits were so insubstantial that they could not cover even a small portion of their steadily-mounting debt.  The Wises, who are African-American, tell a different story; from their perspective, the FSA's refusal to continue servicing their loans amounted to race-based discrimination.

B.      The First Law Suit

In 2013, the Wises sought to vindicate their racial-animus theory and brought suit against the USDA under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., which makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction" on the basis of race, among other things.  Id. at § 1691(a).  See generally Wise v. USDA, No. 4:13-CV-234-BO (E.D.N.C.) (sometimes, the "2013 suit").  In addition to suing the USDA, the Wises also sued several USDA employees in their individual capacities, each of whom allegedly was involved in the FSA's refusal to service the Wises's loans.  On October 27, 2014, the court dismissed the Wises's 2013 suit on the government's motion for failure to state a claim upon which relief could be granted.  See Wise v. USDA, No. 4:13-CV-234-BO, 2014 WL 5460606 (E.D.N.C. Oct. 27, 2014).  The Wises noted a timely appeal, and the Fourth Circuit affirmed the district court.  See Wise v. USDA, 592 F. App'x 203 (4th Cir. 2015).

2

C.  The Instant Proceedings

On November 19, 2014, while the Wises's appeal was pending, the government initiated this proceeding to collect the Wises's outstanding debt, which it accelerated by notice dated August 14, 2013. The government sought to foreclose its security interest in the Wises's real and personal property, evidenced by the deeds of trust and security agreements, through judicial foreclosure. On December 2, 2014, the Wises asserted against the USDA various counterclaims. Those counterclaims included federal claims alleging 1) race-based discrimination in the extension of credit, in violation of the ECOA; 2) "deliberate indifference" to their civil rights, in violation of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983; 3) conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985; 4) neglect to prevent a conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1986, as well as a claim for review of administrative action under the Administrative Procedure Act, 5 U.S.C. §§ 701–06. In addition, the Wises asserted claims for fraud, negligent supervision and negligent retention under North Carolina law. The Wises's counterclaims were substantially identical to the claims asserted against the USDA and certain of its employees in the 2013 suit. The Wises's counterclaims also were interposed against a subset of the same USDA employees; although, in their counterclaims, the Wises sued the employees in both their official and individual capacities.

On January 26, 2015, the government filed a motion to dismiss the Wises's counterclaims based on res judicata. In particular, the government argued that the Wises's claims were barred because the Wises either already had brought each claim, or already should have brought such claim, as part of the 2013 suit. Later, on March 10, 2015, the government filed a motion for summary judgment on its foreclosure claim. The court granted the government's motion to dismiss by oral

3

order entered at a hearing held on September 14, 2015. At that hearing, the court also indicated that it would grant the government's motion for summary judgment by a subsequent written order, which entered on October 9, 2015. See United States v. Wise, No. 5:14-CV-844, 2015 WL 5918027 (E.D.N.C. Oct. 9, 2015) (the "Foreclosure Order"). However, to ensure judgment extinguished fully the rights secured by the deeds of trust, the court withheld entry of judgment and directed the government to name as plaintiff the trustee or substitute trustee of the deeds of trust at issue. The government filed its amended complaint on October 19, 2015, naming as plaintiff Charles M. Huskey, the substitute trustee.[1]

Prior to the filing of the government's amended complaint, on October 14, 2015, the Wises filed a motion to reconsider the Foreclosure Order (their "First Motion to Reconsider"). In their First Motion to Reconsider, the Wises raised three principal arguments. First, they contended the court should reconsider the Foreclosure Order because, before the court's judgment properly could enter and before the government could begin a foreclosure sale, they were entitled to an administrative hearing before the USDA. The Wises substantiated their demand for a hearing by directing the court to the fact of their participation in a 1997 class action suit against the USDA, which followed the major revelation of a long and embarrassing history of racial discrimination in USDA-administered programs. See generally Pigford v. Glickman, 182 F.R.D. 341 (D.D.C. 1998) (discussing background and certifying class). The Pigford case was settled by consent decree, see Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999) (providing slight modification to class and approving consent decree), which provided a complex settlement procedure whereby class members

---

[1] For ease of reference, the United States and plaintiff Huskey are referred to collectively as "the government" throughout.

could either "opt out" of the class, or stay in the class and elect from one of two different claim settlement methods, colloquially known as "Track A" and "Track B."  See generally <u>In re</u> Black Farmers Discrimination Litig., 856 F. Supp. 2d 1 (D.D.C. 2011) (explaining Pigford consent decree settlement procedures).[2]

Second, the Wises argued that the court should reconsider its Foreclosure Order because their loans were subject to a statutory and regulatory moratorium on foreclosure.  The Wises contended that the moratorium was triggered because, sometime after the court's September 14, 2015 hearing, they had filed a complaint with the USDA's Office of Administrative Law Judges ("OALJ"), alleging racially discriminatory financing practices in violation of the ECOA, known as a "claim of program discrimination" or a "program discrimination complaint."  See generally 7 U.S.C. § 1981a(b) (establishing moratorium when "claim of program discrimination" is "accepted as valid"); 7 C.F.R. § 766.358(a) (same; using the term "program discrimination complaint").  Third, the Wises argued that the court should reconsider the Foreclosure Order, withhold entry of judgment, and transfer this case to the United States District Court for the District of Columbia.  The Wises contended that district court had exclusive jurisdiction over their counterclaims, and all claims interposed by members of the Pigford class alleging racial discrimination in the administration of USDA funded programs, by virtue of the Pigford consent decree.

---

[2] "'Track A' allowed a claimant to prevail by presenting 'substantial evidence' of discrimination to a neutral, third-party 'Adjudicator.'" Black Farmers, 856 F. Supp. 2d at 9.  By contrast "Track B claims were to be heard by another third-party neutral, the 'Arbitrator,' who could receive written testimony and documentation as evidence but would conduct only a one-day mini-trial of each plaintiff's claims." Id. at 10.  Claimants choosing Track B, unlike those proceeding along Track A, were required to prove their claims by a preponderance of the evidence." Id.  Claims under Track A were subject to a cap on damages, while claimants proceeding under Track B were awarded the full amount of damages necessary to compensate them for their loss. Id. at 9–10.

5

On November 18, 2015, the court denied the Wises's motion for reconsideration. See generally United States v. Wise, No. 5:14-CV-844-FL, 2015 WL 7302245 (E.D.N.C. Nov. 18, 2015) (the "First Reconsideration Order"). On the Wises's first argument, the court held that they had failed to demonstrate reconsideration was proper where their own evidence, as well as evidence submitted by the government, demonstrated that they had opted out of the Pigford class. (See DE 44-1, 2; see also DE 40-11, 2) ("[We] chose to opt out of the Pigford v. Veneman class action lawsuit and become lead plaintiffs in a new class action lawsuit against the USDA called Wise v. Veneman."). The First Reconsideration Order went further and held that even assuming the Wises were part of the Pigford class, their discrimination allegations were not covered by the consent decree where that document had no effect on prospective, or future, claims.

Finally, on the Wises's first argument, the court considered and rejected the applicability of § 741 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681 § 741 ("§ 741") (codified at 7 U.S.C. § 2279 (historical note)). Section 741 waived the statute of limitations for ECOA claims alleging discrimination "during the period beginning on January 1, 1981 and ending December 31, 1996," and provided for an administrative hearing prior to the foreclosure of loans potentially tainted by such ECOA claims. Id. § 741(e). The Wises argued that the government was required to provide an administrative hearing on their claims arising in 2011. The court rejected that argument, holding that § 741 did not apply to discrimination claims arising outside the relevant time period, January 1, 1981, to December 31, 1996. The court also held that,§ 741 did not necessarily entitle the Wises to an administrative hearing on their ECOA claim, because administrative relief could be pursued only

6

"in lieu of" a suit in federal district court, which the Wises pursued as early as 2013. See Wise v. USDA, No. 4:14-CV-234-BO (E.D.N.C.).

On the Wises's second argument in support of their First Motion for Reconsideration, the court held that the they had failed to demonstrate the applicability of the relevant moratorium provisions, 7 U.S.C. § 1981a(b) and 7 C.F.R. § 766.358(a), in the instant case. In particular, the court reasoned that the regulations cited by the Wises, 7 C.F.R. § 15.1 et seq., were inapplicable as to the USDA and, thus, the Wises's unsubstantiated claims that they filed a program discrimination complaint under those regulations was not sufficient to carry their burden to demonstrate that the moratorium provisions applied. Moreover, relying on 7 C.F.R. § 766.358(a), the court held that the 2013 suit operated to bar the Wises's complaint, where their ECOA claim had been "closed by a court of competent jurisdiction." Id. Finally, on the Wises's third argument, the court denied the Wises's motion to transfer, relying on its conclusion that they were not members of the Pigford class. The court's judgment entered the same day.

On November 23, 2015, the Wises noted a timely appeal of the court's judgment. United States v. Wise, No. 15-2477 (4th Cir.). Also on that day, the Wises filed a motion to stay the court's judgment pending appeal. Therein, the Wises argued they likely would succeed on the merits of their appeal for four reasons. First, the Wises contended that they were likely to succeed because their 2015 administrative complaint, filed with the USDA's OALJ, triggered a moratorium that prohibited the government from pursuing further these foreclosure proceedings. Second, the Wises argued that they were likely to succeed on appeal because they were members of the Pigford class. In particular, they argued that class membership entitled them to a hearing before the USDA  Third, the Wises argued that court erred in dismissing their counterclaims because the doctrine of res

7

judicata did not apply to bar their official capacity suits against the various USDA employees. Fourth, and finally, the Wises argued that the court should stay enforcement of the judgment because this court lacked jurisdiction to adjudicate their ECOA claim against the USDA. Rather, the Wises, relying on their contention that they were part of the Pigford consent decree, argued the court should have transferred their counterclaims to the Court of Federal Claims, which has jurisdiction to enforce settlement agreements against the government.

On February 25, 2016, the court entered order denying the Wises's motion to stay enforcement of the judgment, concluding, as to each of their arguments, that the Wises had failed to demonstrate a likelihood of success on the merits. United States v. Wise, No. 5:14-CV-844-FL, 2016 WL 755627 (E.D.N.C. Feb. 25, 2016) (the "Stay Order"). On their first argument, the court held that the Wises had failed to demonstrate that their complaint with the USDA's OALJ would trigger the statutory or regulatory moratorium provisions. On their second argument, the court held that the Wises had failed to demonstrate that they were members of the Pigford class. On their third argument, the court concluded that it had not erred in dismissing, on the basis of res judicata, the Wises's counterclaims against the USDA employees in either their individual or official capacities. With respect to the individual-capacity counterclaims, the court held that the Wises either had asserted, or should have asserted, those counterclaims as part of the 2013 suit. With regard to the official-capacity counterclaims, the court held that the Wises's 2013 suit against the USDA barred their counterclaims against the USDA employees in their official capacities and that, in any event, res judicata barred those official-capacity claims because they should have been brought as part of the 2013 suit. Finally, on their fourth argument, the court concluded that the Court of Federal Claims would lack jurisdiction over the Wises's ECOA claims, thus rendering their argument without merit.

8

Case 5:14-cv-00844-FL   Document 89   Filed 04/12/16   Page 8 of 15

On March 2, 2016, the Wises filed the instant motion to reconsider the Stay Order. Again, the Wises argue the effect of the Pigford consent decree. In particular, the Wises argue that the court should reconsider the Stay Order to correct a clear legal error, where they are members of the Pigford class, which entitles them to an adversarial hearing before the USDA before the government may foreclose on their property. Relatedly, the Wises suggest that reconsideration of the Stay Order is proper because the government's attempt to foreclose is a breach of the Pigford consent decree, which must be adjudicated by the Court of Federal Claims. In addition, the Wises raise the effects two pieces of legislation, one unpassed, on their ECOA claims. See Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, 122 Stat. 923 § 14012 (2008); Pigford Claims Remedy Act of 2007, S. 515, 110th Cong. § 2 (2007); S. 1989, 110th Cong. § 2 (2007); H.R. 3073, 110th Cong. § 2 (2007); H.R. 899, 110th Cong. § 2 (2007). Apart from their Pigford-related arguments, the Wises also argue that they are entitled to a moratorium under the previously-asserted statutory and regulatory moratorium provisions, 7 U.S.C. § 1981a(b) and 7 C.F.R. § 766.358(a). Finally, the Wises again suggest that the court erred in dismissing their counterclaims on the basis of res judicata.

**COURT'S DISCUSSION**

A.   Standard of Review

Rule 60(b) authorizes the court to "relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . (3) fraud . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P.

9

60(b). Under Rule 60(b), a movant first must demonstrate that the movant acted promptly, that the movant has a meritorious claim or defense, and that the opposing party will not suffer prejudice by having the judgment set aside. See Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993); Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988) (per curiam). If those three threshold conditions are met, the court then must determine whether the movant has satisfied "one of the six enumerated grounds for relief under Rule 60(b)." Gray, 1 F.3d at 266.

B.  Analysis

The Wises's motion for reconsideration properly is denied because it does not raise any new argument not previously addressed by the court. On a motion for reconsideration, as with a motion for stay, the burden is on the movant to establish his or her entitlement to relief. See Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989) (holding movant bears burden in proving entitlement to reconsideration); Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970) (holding movant bears burden in motion for stay). A motion for reconsideration is not proper where an argument already has been fully considered and rejected. See Projects Mgmt. Co. v. Dyncorp Int'l, LLC, 17 F. Supp. 3d 539, 542 (E.D. Va. 2014).

Time and time again, the Wises have raised the same arguments. And each time, the court has roundly rejected them. The Wises's displeasure with the outcome of this suit is apparent. The consequences of the court's judgment are serious, and at each stage of this proceeding the court has attempted to address the Wises's arguments with voluminous explanation and a degree of solemnity commensurate with the magnitude of its judgment. The court has studied, with little assistance from either party, the many and sometimes-less-than-clear regulations governing FSA foreclosure

10

proceedings, as well as the regulations governing the FSA, the OALJ, and the various types of discrimination complaints handled by the USDA's Assistant Secretary for Civil Rights ("ASCR") through the USDA's Office of Civil Rights ("OCR"). Each time, the court has concluded that these regulations, along with their governing statutes, offer the Wises no relief. Certainly, the Wises are entitled to dispute that conclusion, as they presently do. However, mere displeasure, disagreement, or divergence of mind is an insufficient basis upon which to rest a motion for reconsideration. Just because the Wises believe a statute or regulation carries a particular meaning does not make it so.

In addition, the court encourages the Wises to take full advantage of Federal Rule of Appellate Procedure 8, which authorizes the court of appeals to stay enforcement of the district court's judgment, if such stay is denied by the district court. In so doing, the court observes that the Wises already have a fully briefed motion to stay pending before the Fourth Circuit.

    1.    <u>Pigford</u> Arguments

The Wises first argue that reconsideration is proper because they are members of the <u>Pigford</u> class and such membership entitles them to a hearing before the USDA as a prerequisite to foreclosure. In addition the Wises argue that the government's present suit represents a breach of the <u>Pigford</u> consent decree. However, as the court previously has held, the Wises were not parties to the <u>Pigford</u> consent decree because they opted out. Moreover, the <u>Pigford</u> consent decree does not apply to claims not existing at the time it was approved by the court. The Wises's 2011 discrimination claim, arising over a decade after the <u>Pigford</u> consent decree, is not covered. The Wises have not produced any new evidence and merely rehash old arguments. Thus, their motion for reconsideration is denied on this point.

    2.    Moratorium Provisions: 7 U.S.C. § 1981a(b) and 7 C.F.R. § 766.358(a).

The Wises next argue that the court should reconsider its order denying their motion for a stay because the government has foreclosed on their property in violation of various moratorium provisions. The statutory provision at issue provides that "effective beginning on the date of the enactment of this subsection, there shall be in effect a moratorium . . . on all acceleration and foreclosure proceedings instituted by the [USDA] against any farmer or rancher who . . . files a claim of program discrimination that is accepted by the Department as valid." 7 U.S.C. § 1981a(b). Similarly, the associated regulation provides that "borrowers who file or have filed a program discrimination complaint that is accepted by" OCR and have been "serviced to the point of acceleration or foreclosure on or after May 22, 2008, will not have their account accelerated or liquidated until such complaint has been resolved by USDA or closed by a court of competent jurisdiction." 7 C.F.R. § 766.358(a). However, neither of these provisions afford the Wises any right to a stay of the court's judgment.[3]

*First*, although the Wises filed a program discrimination complaint against the USDA, they have submitted no evidence that it was "accepted as valid." A complaint of program discrimination

---

[3] In the <u>Reconsideration Order</u>, the court reviewed the substance of the Wises's program discrimination complaint and reasoned that the Wises had failed to demonstrate the moratorium provisions applied because their program discrimination complaint cited only the regulations enforcing Title VI of the Civil Rights Act of 1964. 7 C.F.R. § 15.1 et seq. However, the language used in that order is imprecise, and suggests that the Wises's filing of the their 2013 suit was the putative moratorium-triggering event. The court herein takes the opportunity to clarify that analysis. The Wises's First Motion to Reconsider failed to demonstrate that the complaint they filed with the USDA actually could be "accepted as valid," thus triggering a moratorium, because the ground for relief asserted therein—in particular, relief under Title VI of the Civil Rights Act— does not apply to the USDA. See <u>Reconsideration Order</u>, 2015 WL 7302245, at *9. The court's apparent reference to the Wises's 2013 suit actually is a reference to the allegations raised in that suit, which also were raised in their counterclaims in the instant action, as well as their program discrimination complaint. So restated, this ground also supports denying the Wises's instant motion.

12

must be submitted to the USDA's Office of Adjudication, a subdivision of the USDA's OCR. 7 C.F.R. § 766.358(a). However, merely <u>filing</u> a program discrimination complaint does not trigger a moratorium. 7 U.S.C. § 1981a(b); 7 C.F.R. § 766.358(a). Rather, a moratorium applies only after the claim is "accepted as valid." 7 U.S.C. § 1981a(b); 7 C.F.R. § 766.358(a). Filing and acceptance are discrete steps. <u>See</u> Loan Servicing; Farm Loan Programs, 74 F.R. 39565-01, 2009 WL 2407352, at *39566 (Aug. 7, 2009). A program discrimination complaint is "accepted" once it has been reviewed "on basic procedural grounds." <u>Id.</u>

The Wises's program discrimination complaint was filed with the OCR, at earliest, on November 17, 2015. <u>See</u> <u>Wise</u>, No. 16-2, 2015 WL 9241444 (U.S.D.A. Nov. 17, 2015) (dismissing complaint as filed in incorrect office). However, it does not follow that it was "accepted as valid" that same day. The filing and "acceptance" of a complaint are discrete steps, with only the latter triggering a moratorium. <u>See</u> 7 C.F.R. § 766.358; <u>see also</u> 74 F.R. 39565-01, 2009 WL 2407352, at *39566. The Wises have produced no evidence to suggest that their program discrimination compliant was "accepted as valid" prior to the court's November 18, 2015 judgment. Thus, they have failed to carry their burden.

*Second*, the court has grave and serious doubts about whether the Wises's program discrimination complaint ever could be "accepted as valid." All program discrimination complaints "must be filed within 180 calendar days from the date the person knew or reasonably should have known of the alleged discrimination, unless the time is extended for good cause by the ASCR or [his] designee." 7 C.F.R. § 15d.5. The Wises's program discrimination complaint alleged discrimination occurring in 2012; however, it was not filed until late 2015, more than 2.5 years outside the 180 day limitations period. (<u>See</u> DE 72-3).

13

*Third*, and finally, it is dubious that, even if the Wises's complaint of program discrimination were accepted as valid, it could be used to stall the sale of their property. Pursuant to § 766.358(d), the moratorium provisions do not apply when an account already is in foreclosure at the time a program discrimination complaint is filed. See 74 F.R. 39565-01, 2009 WL 2407352, at *39566. The Wises's account was accelerated, and thus in foreclosure, no later than April 1, 2015, the day after the court of appeals mandate issued following the Wises's appeal of their 2013 suit. See 7 C.F.R. § 766.358(c) (describing the date of acceleration); id. § 766.358(d). Thus, as of that date, the moratorium provisions no longer were applicable. See 74 F.R. 39565-01, 2009 WL 2407352, at *39566. The Wises's program discrimination complaint was not filed until some six months later.

In sum, the Wises's motion for reconsideration properly is denied as to their second, moratorium argument.

3. Res Judicata

The Wises finally argue that the court should grant their motion for reconsideration of the Stay Order, because they are likely to succeed on their res judicata arguments on appeal. The Wises raise no new argument with respect to the court's earlier res judicata analysis. Thus, the court rests on its prior order and the Wises's motion for reconsideration is denied on this point.

**CONCLUSION**

Based on the foregoing, the court DENIES the Wises's motion to reconsider the court's

14

Case 5:14-cv-00844-FL   Document 89   Filed 04/12/16   Page 14 of 15

February 25, 2016, order denying a stay of its judgment pending their appeal. (DE 84).

This 12 day of April, 2016.

_____
W. Earl Britt
Senior U.S. District Judge